RICHARDSON & CO. v. CORNFORTH.*

(Circuit Court of Appeals, Seventh Circuit. · October 7, 1902.)

No. 882.

1. SALES—STANDARD OF WEIGHT—APPLICATION.
   Where oats were sold without any agreement as to the standard of weight governing the number of pounds to the bushel, the standard in force at the place where the oats were purchased governs the contract.

2. SAME—CONSTRUCTION—PAROL EVIDENCE.
   Telegrams constituting a sale of a quantity of clipped oats purchased in Chicago for shipment to the buyer in Seattle recited that the oats would test from 36 to 37 pounds per bushel, and the telegram of acceptance accepted offer for white clipped oats, 36 pounds to bushel, Chicago Board grade. Defendant shipped a sufficient quantity of oats at 32 pounds per bushel to fulfill the contract, but plaintiff, claiming that the contract called for 36 pounds per bushel, sued for breach of contract, in which evidence was offered that, according to the customs of the Chicago market, 32 pounds was the standard bushel of oats, and that the "test 36 and 37 pounds per bushel" had reference solely to the quality of the oats. *Held*, that the contract did not show a meeting of minds on the standard by which the oats should be measured, and that the evidence of the Chicago custom was admissible.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Seymour Edgerton and George P. Merrick, for plaintiff in error.
H. K. Tenney, for defendant in error.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

GROSSCUP, Circuit Judge, delivered the opinion of the court.

Richardson and Company, a corporation organized under the laws of Illinois, plaintiff in error, was the defendant below, and Joseph T. Cornforth, defendant in error, a citizen of the State of Washington, was the plaintiff below.

The suit in the Circuit Court, was to recover seven thousand, eight hundred dollars, damages for failure to ship about eighteen thousand, three hundred and thirty-four bushels of number two white clipped oats, on a contract calling for one hundred and sixty thousand bushels, payment for one hundred and sixty thousand bushels having been made by the purchaser to the vendor. Defendant below pleaded that the full quantity of one hundred and sixty thousand bushels had been shipped.

It is admitted that five million, one hundred and twenty thousand pounds of oats were delivered and accepted under the contract. Defendant below insisted that this fulfilled the contract, taking thirty-two pounds as the standard of a bushel. Plaintiff below claimed that thirty-six pounds should have been taken as the standard of a bushel. The controversy turns solely upon the question whether thirty-two pounds or thirty-six pounds was, under the contract, the standard of the bushel.

* Rehearing denied November 15, 1902.

The contract was by telegraphic correspondence. Plaintiff below desiring to bid upon a government contract calling for twenty five hundred tons (five million pounds of oats) to be delivered at Tacoma or Seattle, asked the agent of the Chicago, Milwaukee & St. Paul Railroad, at Portland, Oregon, to ascertain on what terms the oats necessary to the contract, could be purchased in Chicago. Thereupon the following telegrams passed:

E. S. Keeley,                          "Seattle, Wash., 26 Sept., 1900.
    Chgo.
Wire F. O. B. prices Chicago on 160,000 bushels clean white oats in new burlaps 100 pounds each also in bulk. Rate per ton required Chicago to St. Paul 125. Destination China. Answer here by Friday.
                                (Signed)    C. J. Eddy."

C. J. Eddy,                            "Chgo. Sept. 28.
    C. M. & St. P., Seattle, Wash.
Can get quantity desired immediate shipment best quality Green Bay inspection white fanned oats in bulk 25 cents, burlaps 26½ cents with 7c. added for burlaps. Clipped oats test 36 to 37 pounds per bushel acceptance this week F. O. B. Green Bay. Can quote a delivered price Asiatic ports to Seattle on very low freight basis. Connection Canadian Pacific.
                                (Signed)    H. E. Pierpont."

H. E. Pierpont,                        "Portland, Sept. 29.
    Chgo.
Your wire 28th quote price oats with lowest through rate to Seattle.
                                (Signed)    C. J. Eddy."

C. J. Eddy,                            "Chgo. Oct. 1, 1900.
    Portland.
On offer for 160000 bushels white clipped oats can get price of 25 cents per bushel F O B Chicago.
                                (Signed)    H. E. Pierpont."

H. E. Pierpont,                        "Seattle, Oct. 2.
    Chgo.
Mr. Comings asks are oats white what weight per bushel for clipped how soon could they be shipped?
                                (Signed)    R. M. Boyd."

R. M. Boyd,                            "Chgo. Oct. 4.
    Seattle.
We quoted Eddy price of white oats clipped, test, thirty-six to thirty-seven pounds. Is there any prospect of securing this contract?
                                (Signed)    H. E. Pierpont."

H. E. Pierpont,                        "Seattle, Oct. 5/00.
    Chgo.
Your wire yesterday Comings claims to control lowest bids on oats awaiting award of contract will advise later.
                                (Signed)    R. M. Boyd."

H. E. Pierpont,                        "Seattle, Oct. 8.
    Chgo.
Comings has contract how soon can all be loaded?
                                (Signed)    R. M. Boyd."

H. E. Pierpont,                        "Seattle, Oct. 8.
    Chgo.
Arrived here today Comings advises he has the oats contract and finances arranged through bank how soon can they move after satisfactory settlement is arranged answer here.
                                (Signed)    C. J. Eddy."

R. M. Boyd,                                    "Chicago, Oct. 8, 1900.
    Seattle.
Wire quick what basis accepted on the oats quantity and to whom
invoiced and what inspection required.
                        (Signed)    H. E. Pierpont."

H. E. Pierpont,                                    "Seattle, Oct. 8.
    Chgo.
Your message today Comings says basis white cleaned clipped oats 36
to 37 pounds to be bushel in bulk F O B Chgo amount one hundred and
sixty thousand bushels price 25 cts will advise as to inspection tomorrow.
How soon can they be loaded and forwarded?
                        (Signed)    R. M. Boyd."

O. J. Eddy,                                    "Chgo. Oct. 9.
    Seattle.
Offer good for reply to reach us by 11 A. M. tomorrow one hundred
sixty thousand bushels No. 2 clipped white oats 36 pounds to bushel 25 cents
F O B Chicago prompt shipment really excellent quality pass any inspec-
tion but sold on basis Chgo. Board grade No number one grade.
                    (Signed)    H. E. Pierpont."

H. E. Pierpont,                                    "Seattle, Oct. 9.
    Chgo.
I am advised that offer is accepted and that Bank of Seattle will tele-
graph parties you designate tomorrow morning making the necessary financial
arrangement for payment of one hundred and sixty thousand bushels of
oats in accordance with your telegram this date answer quick.
                    (Signed)    C. J. Eddy."

H. E. Pierpont,                                    "Seattle, Oct. 9/00.
    Chgo.
Expect to be able to advise you today as to inspection and invoice to a
certain bank wire quick as possible when oats can be loaded and forwarded.
                    (Signed)    C. J. Eddy."

"O. J. Eddy,
    Seattle, Wh.
Have closed one hundred sixty thousand oats with Richardson & Co. Board
of Trade, Chicago basis twenty-five cents F O B Chicago. Have bank wire
them direct and give shipping instructions and advise quick. Our arrange-
ments are with Canadian Pacific.
                    (Signed)    H. E. Pierpont."

Eddy and Boyd were connected with the railroad company on the
Pacific, and Pierpont and Keeley were connected with the road in
Chicago. Plaintiff below having obtained the contract with the gov-
ernment, arranged with the Puget Sound National Bank of Seattle,
to finance his contract, and thereupon the following telegram was
sent:

Richardson & Co.,                                    "Oct. 11, 1900.
    Board of Trade,
        Chicago, Ill.
. Drafts with bills of lading attached for one hundred sixty thousand bushels
number two white clipped clean oats, thirty-six pounds to bushel, Chgo.
board grade if shipped promptly, last shipment to leave Chicago before
October 16th, will be paid on presentation if shipped from Chgo. to Seattle
via Minnesota, transfer on C., M. & St. P. Railway and Northern Pacific
Railway consigned to us here. This is the lot of oats about which P. E.
Pierpont has been negotiating with you. Answer.
        The Puget Sound National Bank of Seattle,
                          J. Furth, Pt."

to which defendant below replied as follows:

"Chicago, Ills. October 11th, 1900.

J. Furth,
   President Puget Sound Nat. Bank of Seattle,
                       Seattle, Wn.
   Message received; will ship fifty to seventy-five thousand immediately cars
obtainable, balance within fourteen days; can't obtain cars sooner; will ship
out fast as possible; sale made basis Chicago exchange; answer.
                                       Richardson and Co."

This completed the arrangement, and accordingly, the oats were from time to time shipped by defendant below, and drafts made on the basis of thirty-two pounds to the bushel.

It is claimed by counsel for both parties, that the contract, embodied in these telegrams, is unambiguous. This would seem to exclude the necessity of extrinsic proof. But while the defendant in error insists that the contract, rightly read, clearly shows that thirty-two pounds to the bushel was to be taken as the standard of measurement, counsel for defendant in error insists, with equal emphasis, that it is clearly shown that thirty-six pounds was the standard agreed upon. Our own inspection of the telegrams leaves us with the belief that if the contract be unambiguous, it should be interpreted to mean thirty-two pounds to the bushel. That such upon its face is the meaning of the contract however, we do not decide.

Clipped oats are oats which have been put through a machine, by which the worthless ends of the husk are cut off. The result is, that the oats thus clipped, takes up a less space, and that a given cubic measure will weigh more than the same measure when filled with oats in their natural state.

A given cubic measure of clipped oats, however, has by no means a fixed weight. It varies according to quality, from thirty-two to forty-two pounds to the measured bushel. In the grading of clipped oats, therefore, weight to the measured bushel, is an essential element.

On the trial of the case, oral evidence was introduced by defendant below, tending to show that in transactions on the Board of Trade of Chicago, number two white clipped oats is sold upon the standard of thirty-two pounds to the bushel; but tested as to quality at not less than thirty-four pounds to the measured bushel. A regulation, to that effect, also, is among the printed rules of the Board. The Circuit Court, however, at the conclusion of the testimony of the defendant below, held that the contract embodied in the telegrams, called for delivery on the basis of thirty-six pounds to the bushel, from which it followed that the evidence extrinsic to the contract, was irrelevant. Upon this view, a verdict was rendered for the plaintiff below, upon the instruction of the court.

We cannot concur with the Circuit Court in the conclusion that the extrinsic evidence is irrelevant. The plaintiff below came into the Chicago market for his purchase. In that market, thirty-two pounds has been fixed by statute, as the standard for the measurement of a bushel of oats. This may not include, it is true, oats artificially treated; but it may be shown, by the custom of the market, to have been applied to clipped oats as well. The telegrams do not show that the minds of the parties came together on a different specific basis. There are repeated allusions to "thirty-six pounds," and to "thirty-seven

pounds" to the bushel; but upon the part of the seller, at least, this could easily, in view of the customs of the Chicago market, have been understood as reference to quality, and not to standard. An inspection of the telegrams leaves room for the view, either that the standard agreed upon was thirty-two pounds to the bushel, or that the parties came to no specific agreement upon that element of the contract.

In the absence of an agreed standard, the standard of the place where the commodity is purchased governs; and the evidence offered tended, at least, to show that such standard was thirty-two pounds to the bushel. In such a situation, the evidence ought not only to have been submitted to the jury, but the judgment of the jury taken, based upon the customs of the market where the oats were purchased.

The judgment of the Circuit Court will be reversed, and the case remanded, with instructions to grant a new trial.